UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CALEB KING<br><br>Plaintiff,<br><br>v.<br><br>GINA RAIMONDO, UNITED STATES SECRETARY OF COMMERCE,<br><br>Defendant. | 3:25-CV-01324 (SFR) |

## MEMORANDUM & ORDER

Plaintiff Caleb King, a former employee of the Department of Commerce, Decennial Census, brings an action *pro se* under Title VII, the Age Discrimination in Employment Act, and the Americans with Disability Act asserting discrimination based on race, color, gender/sex, religion, age, and disability or perceived disability. Howard Lutnick[1] moves to dismiss all claims. For the following reasons, I grant the motion to dismiss but grant King leave to amend the complaint.

## I. BACKGROUND

### A. Factual Background

I note at the outset that King submitted a form complaint with no written statement of facts. Compl., ECF No. 1. King did, however, attach to his Complaint an Equal Employment

[1] The original complaint names the former Secretary of Commerce, Gina Raimondo, as defendant. Pursuant to Fed. R. Civ. P. 25(d), I am substituting Howard Lutnick, the new Secretary of Commerce, here. Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name. . . .").

Opportunity Commission ("EEOC") "Decision on Request for Reconsideration," ("EEOC Recons."), which I therefore consider incorporated by reference. ECF No. 1-1; *Jermaine I v. Raimondo*, Decision No. 2024001177, 2024 WL 1461228 (E.E.O.C. Mar. 19, 2024)[2]; *see Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference."). I also take judicial notice of the underlying EEOC Decision on Appeal which King sought to have reconsidered.[3] *See Jermaine I. v. Raimondo*, Decision No. 2023003700, 2023 WL 8110074 (E.E.O.C. Oct. 31, 2023).[4]

King was employed as an Administrative Manager for the Department of Commerce, Decennial Census, in the Hartford, Connecticut Area Census Office (ACO) from July 2019 until his termination in November 2019. EEOC Recons. 1-2. On December 4, 2019, King filed an EEO complaint alleging that the ACO "discriminated against him and subjected him to a hostile work environment on the basis of race (African-American)." *Id*. at 2. King based his

[2] The EEOC assigned a pseudonym for Mr. King when the opinion was published. *Jermaine I*, 2024 WL 1461228, at *1 n.1 ("This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.").

[3] I may take judicial notice of underlying EEOC decisions both as matters incorporated by reference in the complaint, and as public records. *See McBride v. Routh*, 51 F. Supp. 2d 153, 155 (D. Conn. 1999) (collecting cases).

[4] King's EEOC complaint and the original AJ opinion are not considered here because the parties have not provided these documents and they are not publicly available. *See Confidentiality,* U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/confidentiality (last visited Aug. 5, 2026) ("By law, the EEOC must keep charge information confidential and will not disclose information related to a charge to the public.").

EEOC complaint on the following allegations: (1) King's "Area Census Office Manager (ACOM) physically stepped in [King's] face while the ACOM was conducting new hire orientation"; (2) the ACOM yelled "pause, pause" in King's face; (3) when initially greeting King, the ACOM stated, "I didn't hire you, so I can't fire you"; (4) the ACOM told King "that he should not receive disabled veterans leave and questioned [King] about his disabilities and religion"; (5) the ACOM told King to wear collared shirts, and when King informed the ACOM he was homeless, the ACOM said, "I don't care, go to the Salvation Army"; (6) King "was accused by the Assistant Regional Census Manager (ARCM) of inappropriate text messaging on another employee's personal phone;" and (7) during an overnight stay, King "was the only employee to be booked into a separate hotel, in a different town." *Id.* Additionally, King alleged that he was subject to disparate treatment based on race when he was terminated on November 1, 2019. *Id.*[5]

After investigating King's claims, the EEOC denied King a hearing before an Administrative Judge ("AJ"), and the AJ issued a summary judgment decision concluding King failed to prove his claims of discrimination or hostile work environment. *Id*. at 2-3. The agency concluded that "[King] had failed to articulate any issues of material fact that required a hearing and failed to identify any specific areas of discovery which would yield evidence of discriminatory motive or intent. The AJ found the record shows that the Agency had a

[5] King alleged additional facts in his Memorandum Opposing the Motion to Dismiss filed October 3, 2025. Pl.'s Opp'n to Mot. to Dismiss, ECF No. 33. He also filed further exhibits on November 4, 2025. Pl.'s Exs., ECF No. 46. I do not consider any new facts alleged in the Memorandum or the Exhibits, as they are not in the Complaint, attached to it, or incorporated by reference. *See In re Colonial Ltd. P'ship Litig.,* 854 F. Supp. 64, 79 (D. Conn. 1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss.").

legitimate, non-discriminatory reason for its action and there was no evidence of pretext or discriminatory animus." *Id.* at 3. King appealed, restating his arguments and raising new claims of discrimination. *Id.* On appeal, the agency indicated that the new claims would require a separate process. *Id.* at 3-4. As for the claims already raised, the agency denied King's request for reconsideration. *Id.* at 4.

**B. Procedural History**

King filed a *pro se* complaint in this action on June 14, 2024, in the United States District Court for the District of Columbia. Compl., ECF No. 1. On February 4, 2025, Lutnick filed a Motion to Dismiss for improper venue, failure to exhaust administrative remedies, and failure to state a claim. ECF No. 8. The Court granted in part Lutnick's motion to dismiss on July 15, 2025, and transferred the case to the United States District Court for the District of Connecticut. *King v. Lutnick*, No. CV 24-1749 (SLS), 2025 WL 1938163 (D.D.C. July 15, 2025), ECF Nos. 14-15.

Following transfer, Lutnick filed a renewed motion to dismiss and motion for stay of discovery on September 15, 2025. Def.'s 2d Mot. to Dismiss, ECF No. 30; Def.'s Mem., ECF No. 30-1; Def.'s Mot. to Stay, ECF No. 31. On October 3, 2025, King filed two memorandums in opposition against the motions to dismiss and to stay. Pl.'s Opp'n to Mot. to Stay, ECF No. 32; Pl.'s Opp'n to Mot. to Dismiss, ECF No. 33. On October 6, 2025, Lutnick filed a second motion to stay in light of the Government shutdown. ECF No. 34. The Court granted this motion on October 7, 2025, ECF No. 35, then lifted the stay on November 26, 2025, after the shutdown ended, ECF No. 38. On January 28, 2026, this Court granted the motion to stay discovery pending a decision on the Motion to Dismiss. ECF No. 40.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted).

Additionally, "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)).

## III. DISCUSSION

In the Motion to Dismiss, Lutnick raises two arguments. First, Lutnick argues that King has failed to exhaust his administrative remedies with respect to some of the discrimination claims he alleges in the Complaint. Def.'s Mem. 3. Second, Lutnick argues that King has failed

to state a claim under which relief can be granted. *Id.* King responds that he raised all claims with the EEOC prior to filing this complaint. Pl.'s Opp'n to Mot. to Dismiss 8-9.

**A. Administrative Exhaustion**

In his form complaint, King alleges violations of the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, and Title VII of the Civil Rights Act of 1964. Compl. 3. He notes the following discriminatory conduct: termination of employment, failure to accommodate disability, unequal terms and conditions of employment, and retaliation. *Id.* at 4. King alleges that the discriminatory conduct was on the basis of his race ("African American"), color ("Br"), gender/sex ("Male"), religion ("(Non-denominational) Christianity"), Age ("(year of birth) 1984"), and disability or perceived disability ("Veteran service connected (physical ailments)"). *Id.*

Lutnick argues that King exhausted only his race-based disparate treatment and hostile work environment claims and accordingly moves for dismissal of all other claims for failure to exhaust. Def.'s Mem. 7. For the reasons that follow, I grant the Motion to Dismiss with leave to amend as to King's age discrimination, retaliation, and gender or sex claims for failure to exhaust administrative remedies. I conclude, however, that King plausibly exhausted disability and religion claims and thus decline to grant the Motion to Dismiss those claims on exhaustion grounds.

In the Second Circuit, "dismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)" rather than as a jurisdictional issue. *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (per curiam); *See also Fernandez v. Chertoff*, 471 F.3d 45, 51, 54-58 (2d Cir. 2006) (evaluating a motion to dismiss for failure to

exhaust a Title VII discrimination claim under the 12(b)(6) standard); *Taylor v. City of New Haven*, No. 22-cv-533 (AWT), 2023 WL 2456706, at *3 (D. Conn. Mar. 10, 2023) (holding that "dismissal for failure to exhaust administrative remedies is subject to Rule 12(b)(6) for failure to state a claim upon which relief can be granted rather than Rule 12(b)(1) for lack of subject matter jurisdiction"). In general, "[a] plaintiff bringing a Title VII claim in federal court must first exhaust their administrative remedies by presenting the claims to the EEOC." *Theophilous v. Bridgeport Mental Health Ctr.*, No. 18-cv-02151 (VAB), 2020 WL 4449949, at *7 (D. Conn. Aug. 2, 2020) (citing *Francis v. City of New York*, 235 F.3 763, 768 (2d Cir. 2000)). "We have recognized, however, that 'claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the agency.'" *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Shah v. N.Y. State Dep't of Civ. Serv*., 168 F.3d 610, 614 (2d Cir. 1999)).

There are three different scenarios in which a claim not raised is reasonably related to the charges that were filed with the EEOC, and is therefore allowed to proceed in the District Court:

> 1) where "the conduct complained of would fall within 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; 2) where the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge"; and 3) where the complaint "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

*Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1402-03 (2d Cir. 1993), *superseded by statute on other*

*grounds as recognized in, Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998)).

### 1. Race and Color Discrimination

Here, the parties do not dispute that King has exhausted his administrative remedies for racial discrimination and hostile work environment claims. EEOC Recons. 2, 4. Additionally, his claim of discrimination based on color is sufficiently related to his claim of racial discrimination as an African American man that it "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Terry*, 336 F.3d at 151 (internal quotation marks omitted).

### 2. Retaliation

King's retaliation claim is not exhausted because it does not appear to have been included in the underlying EEOC charge. Neither the EEOC Decision on Appeal nor the EEOC Decision on Request for Reconsideration discuss retaliation claims. King may therefore bring this claim only if the retaliation alleged was in response to his filing of an EEOC charge. *Id.* King checked a box to allege retaliation on his form Complaint, Compl. 4, but did not allege any facts in the Complaint explaining the claim or alleging that the retaliation occurred in response to his filing of an EEOC charge. Accordingly, due to King's failure to plead sufficient facts, I dismiss the retaliation claim with leave to amend.[6]

[6] If King chooses to include a claim of retaliation in an amended complaint, he will need to show in the amended complaint that he has either exhausted his administrative remedies, or that the alleged retaliation was in response to his filing the EEOC claim. *See Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (outlining the test for evaluating whether a plaintiff has sufficiently alleged Title VII retaliation on a motion to dismiss).

### 3. Age, Gender, and Sex Discrimination

Similarly, nothing in the Complaint or the EEOC decisions state that King presented age, gender, or sex discrimination claims to the EEOC. Accordingly, I dismiss these claims with leave to amend.[7]

### 4. Religion and Disability Discrimination

Finally, the EEOC Decision on Appeal does mention King's allegations regarding religion and disability discrimination. As discussed in the decision, in the list of adverse experiences King alleged to the EEOC, King stated he "was threatened by the ACOM when the ACOM told [King] that he should not receive disabled veterans leave and questioned [King] about his disabilities and religion." *Jermaine I.,* 2023 WL 8110074, at *1. The decision later notes that "the leave [King] requested was ultimately granted," but does not otherwise address the statements about disability or religion. *Id.* at *2. Given the dearth of separately alleged facts, and interpreting the *pro se* complaint liberally, I consider this reference sufficient to establish a plausible claim that King "present[ed]" his claims of discrimination based on disability and religion "to the EEOC." *See Theophilous,* 2020 WL 4449949, at *7. Therefore, I deny the motion to dismiss for failure to exhaust with respect to these two claims.

---

[7] If King chooses to include claims of discrimination based on age, gender, or sex in an amended complaint, he will need to show in the amended complaint that he has exhausted his administrative remedies for those claims. *See Littlejohn v. City of New York*, 795 F.3d 297, 307, 322 (2d Cir. 2015) (outlining the test for evaluating whether a plaintiff has sufficiently alleged discrimination under Title VII on a motion to dismiss, including showing exhaustion).

### B. Failure to State a Claim

Lutnick moves to dismiss King's remaining claims for failure to state a claim. For the reasons that follow, I grant the Motion to Dismiss but provide King with leave to file an amended complaint that addresses the deficiencies identified in this Opinion.

#### 1. Racial Discrimination

In the underlying EEOC action, King claimed that his employer discriminated against him on the basis of race, citing several adverse events during his employment for the Census Office, up to and including his termination. EEOC Recons. 2. Lutnick argues that this claim should be dismissed because the majority of events alleged are not sufficiently adverse for purposes of liability under Title VII, and further that King alleges no facts connecting those events to his race. Def.'s Mem. 10-12.

"Title VII prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008); *see also* 42 U.S.C. § 2000e-2(a)(1) (defining protected characteristics for purposes of prohibition on unlawful employment practices). At the dismissal stage, a plaintiff need only show "(1) that [he] is a member of a protected class; (2) that [he] was qualified for employment in the position; (3) that [he] suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

King sufficiently alleges facts to meet the first two elements of the test. The Complaint alleges that King belongs to a protected class. *See* Compl. 4 ("African American"). Similarly, the fact that King was hired for the role is sufficient proof that he was qualified for that position. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("[Plaintiff] undisputedly was qualified for the . . . position, as he had in fact been hired for that position.").

The third element requires that King suffered an adverse employment action. The Second Circuit has held that "[a]n adverse employment action is 'a materially adverse *change* in the terms and conditions of employment.'" *Mathirampuzha*, 548 F.3d at 78 (emphasis in original) (quoting *Sanders v. N.Y.C. Hum. Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004)). A "materially adverse change[]" is an action that "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry*, 336 F.3d at 138 (internal quotation marks and citations omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks and citation omitted).

Applying this definition, the only action alleged in the EEOC decision that rises to the level of an adverse employment action is King's termination of employment. In addition to the termination, King alleges that the ACOM yelled at him and stepped into his personal space during a new hire orientation, made various unfriendly comments, questioned King about his disability and religion, told him he should not receive disabled veterans' leave, and accused him of "inappropriate text messaging on another employee's personal phone." EEOC Recons. 2. Additionally, King alleges that he was "the only employee to be booked in a separate hotel, in a different town, during an overnight stay" for a training. *Id.* These actions, while unpleasant,

do not reach the level of a "materially adverse change" to King's working conditions. *See Dragon v. Connecticut*, No. 14-cv-749 (MPS), 2015 WL 3905285, at *5 (D. Conn. June 25, 2015) (citation omitted) ("'[B]eing yelled at, or receiving unfair criticism, does not rise to the level of adverse employment actions' . . . ."); *Hollis v. Dep't of Mental Health & Addictive Servs. for the State of Connecticut*, No. 14CV00516 (AWT), 2015 WL 5328131, at *5 (D. Conn. Sept. 11, 2015) ("[R]eprimands and excessive scrutiny do not constitute adverse employment actions. . . . Also, conduct which could be found to be offensive, discourteous, demeaning and/or belittling does not constitute an adverse employment action.") (internal quotation marks and citations omitted); *see also Green v. Avis Budget Grp., Inc.*, No. 11-CV-00269V(F), 2017 WL 35452, at *14 (W.D.N.Y. Jan. 4, 2017), *report and recommendation adopted,* No. 11-CV-269(LJV)(LGF), 2017 WL 1435670 (W.D.N.Y. Apr. 24, 2017) ("[R]equiring an employee to attend training generally is not considered an adverse employment action."); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 309 (E.D.N.Y. 2014) (holding that a transfer that involved extra travel time was not an adverse employment action). "Courts require actions that are more significant and permanent. It is well-established that Title VII 'does not set forth a general civility code for the American workplace.'" *Barounis v. N.Y.C. Police Dep't*, No. 10 Civ. 2631 (SAS), 2012 WL 6194190, at *6 (S.D.N.Y. Dec. 12, 2012) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010).

Finally, at the motion to dismiss stage, King need only allege "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn*, 795 F.3d at 307. "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory

motivation." *Id.* at 311. This standard, while lenient, requires some minimal factual allegation suggesting discriminatory intent. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: . . . [1] the employer's criticism of the plaintiff's performance in ethnically degrading terms; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; or [4] the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in, Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 108-09 (2d Cir. 2013).

King's complaint alleges insufficient facts to support an inference of discriminatory intent. According to the EEOC Decision on Appeal, King pointed to "his status as the only African-American male manager" as "evidence of racial animus." *Jermaine I.,* 2023 WL 8110074, at *3. However, this allegation, without more, is not sufficient. King does not allege facts suggesting that other managers were treated more favorably, nor does he provide any other information that suggests an inference that his termination was motivated by his race. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 495 (2d Cir. 2010) ("Because [the plaintiff] has not identified a similarly-situated employee who faced equally serious allegations and whom [the employer] allowed to remain on the job, [the plaintiff] has failed to raise an inference of discrimination."), *superseded by statute on other grounds as recognized in, Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021); *Murray v. Dutchess Cnty. Exec. Branch*, No. 17-CV-9121 (KMK), 2019 WL 4688602, at *10 (S.D.N.Y. Sept. 25, 2019) (dismissing a complaint of disparate treatment where "Plaintiff fails to identify any

comparators at all, let alone any comparator employee in the Department who was disciplined or otherwise treated differently than he was under similar circumstances").

Accordingly, King has not pleaded sufficient factual information to give plausible support to a minimal inference of discriminatory intent required to survive dismissal. I therefore dismiss King's claim of racial discrimination with leave to amend.

**2. Hostile Work Environment**

In the underlying EEOC action, King also claimed he was subjected to "a hostile work environment on the basis of race." EEOC Recons. 2.[8] As noted, the EEOC decision lists seven events alleged by King relating to hostile work environment. *Id.* Lutnick moves to dismiss the hostile work environment claim for failure to allege a causal connection between King's race and these events. Def.'s Mem. 12.

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citations omitted). "In order to state a claim for hostile work environment based on discriminatory animus, a plaintiff must adequately plead a causal connection between his protected status and the alleged hostile work environment." *Trujillo v. City of New York*, No.

[8] Although King does not specifically allege a hostile work environment in his Complaint, I liberally construe his Title VII claim to include a hostile work environment claim in line with King's EEOC charge. *See* EEOC Recons. 2.

14 Civ. 8501 (PGG), 2016 WL 10703308, at *14 (S.D.N.Y. Mar. 29, 2016) (internal quotation marks and citations omitted), *aff'd,* 696 F. App'x 560 (2d Cir. 2017).

All three of these requirements must be satisfied. In King's case, it is evident from his EEOC claim and his Complaint that he "subjectively perceive[d]" his work environment to be "hostile or abusive." *See Patane*, 508 F.3d at 113. Even assuming that the challenged conduct was objectively severe or pervasive, however, King clearly fails to satisfy the third requirement because he states no facts to suggest that the conduct occurred because of his race.

King provides no factual information in his form complaint. Indeed, the information in the EEOC decision suggests that King may not have viewed several of the events he alleged as racially motivated. Citing an affidavit submitted by King, the EEOC noted that King "stated he was not sure whether the [first three] events were related to his race and that there was nothing to indicate race was a factor." *Jermaine I.,* 2023 WL 8110074, at *2. According to the EEOC decision, in the same affidavit, King stated that the fourth and fifth events were "not based on race." *Id.* The EEOC does not cite the affidavit for the sixth and seventh events, and lists no other factual allegations made by King that could suggest a connection to race.

King has thus insufficiently pled a causal connection between the conduct he claims constituted a hostile work environment and his protected status. Accordingly, I dismiss his hostile work environment claim with leave to amend.

### 3. Discrimination Based on Disability and Religion

Finally, King alleges no facts in the complaint regarding his claims of disability discrimination under the Americans with Disabilities Act ("ADA")[9] or religious discrimination

[9] King brought a claim under the ADA. However, Lutnick states that since King's claims arise out of employment through a federal agency, the Rehabilitation Act applies instead. Def.'s Mem. 7

under Title VII. As such, the only factual information regarding these claims comes from the single sentence in the EEOC's decision on appeal, which states: "[King] was threatened by the ACOM when the ACOM told [King] that he should not receive disabled veterans leave and questioned [King] about his disabilities and religion." *Jermaine I.,* 2023 WL 8110074, at *1.

This information is insufficient to give rise to a plausible claim for relief. As stated previously, for a Title VII claim at the motion to dismiss stage, a plaintiff must allege facts showing "(1) that [he] is a member of a protected class; (2) that [he] was qualified for employment in the position; (3) that [he] suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn,* 795 F.3d at 307. The statement "questioned [King] about his disabilities and religion" does not suggest an incident severe enough to qualify as an adverse employment action, nor does it provide sufficient information to support an inference that the ACOM acted with discriminatory motivation based on King's religion.

Similarly, for a disability discrimination claim, a plaintiff must allege facts showing "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his

---

n.4; *see Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 19 (1st Cir. 2004) ("The Rehabilitation Act, the precursor to the ADA, applies to federal agencies, contractors and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments."). Because the standard under both Acts is substantially similar, I evaluate both here simultaneously without deciding which to apply. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)) ("Because the standards under both statutes are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'").

disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006)). Alternately, a plaintiff can claim failure to accommodate under the ADA by showing: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 125-26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Because a claim of disability discrimination under the ADA likewise requires an adverse employment action and a causal connection between the action and the plaintiff's disability, the event alleged in the EEOC complaint is not sufficient to meet this standard. It would appear that a failure to accommodate claim would also fail to the extent that the requested leave was "ultimately granted." *Jermaine I.,* 2023 WL 8110074, at *2. Accordingly, the minimal factual information provided is insufficient to support plausible claims of either religious discrimination or disability discrimination. I dismiss these claims with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the complaint is dismissed in its entirety with leave to file an amended complaint that addresses the deficiencies identified in this Opinion. On or before September 24, 2026, King may file an amended complaint addressing the issues identified in this Opinion. If King wishes to reference any facts listed in his opposition memoranda or the "exhibits" filed on the docket, those allegations must be included in the amended complaint itself. If King chooses to amend his complaint, I encourage him to contact Quinnipiac University School of Law's Federal Pro Se Legal Assistance Program. That program provides

free, limited-scope legal services to self-represented litigants with cases in this Court who cannot afford to hire an attorney. King may apply for assistance by contacting the program by phone or email at: (203) 850-7720, federalproselegal@qu.edu.

**SO ORDERED.**

New Haven, Connecticut
August 14, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge